UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| SCOTT F. MARSHALL, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:11-CV-552 |
| | ) | | (VARLAN/SHIRLEY) |
| ITT TECHNICAL INSTITUTE, | ) | | |
| | ) | | |
| Defendant. | ) | | |

**MEMORANDUM OPINION**

This civil action is before the Court on the Motion to Dismiss [Doc. 18] by defendant ITT Technical Institute ("ITT"). Plaintiff Scott F. Marshall has submitted a brief in opposition [Doc. 29], to which ITT has filed a reply [Doc. 37]. For the reasons set forth herein, ITT's motion to dismiss [Doc. 18] will be **GRANTED**, plaintiff's claims against ITT will be **DISMISSED**, and this case will be **CLOSED**.

**I.      Relevant Facts[1]**

According to the complaint, ITT is a for-profit school providing educational services; Sallie Mae, Inc. ("Sallie Mae") and United Student Aid Funds, Inc ("USAF") are lenders that provide or facilitate student loans; and Pioneer Credit Recovery, Inc. ("Pioneer") is a

---

[1] The following facts are taken mostly from plaintiff's complaint [Doc. 1-1], and will be assumed as true for purposes of the motions to dismiss. *See, e.g.*, *Directv, Inc. v. Treesch*, 487 F.3d 471, 476 (6th Cir. 2007) (noting that in ruling upon motions to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff").

collection agency and a wholly-owned subsidiary of Sallie Mae [Doc. 1-1, ¶¶ 1-4].[2] Plaintiff alleges that he attended ITT and that he paid his tuition with student loans acquired through Sallie Mae and/or USAF [*Id.*, ¶ 1]. Plaintiff alleges that defendants,[3] through written advertisements and in-person statements, made misleading and deceptive statements in promoting and recruiting plaintiff for a program at ITT [*Id.*, ¶ 7(a)]. Plaintiff alleges that defendants failed to provide all required information and disclosures that would have allowed plaintiff to make an informed decision about enrolling at ITT and that defendants admitted plaintiff into ITT's program despite plaintiff's failure to demonstrate his qualifications for the program through entrance exams, SAT scores, and other unspecified "objective tests which indicate educational competency," [*Id.*, ¶¶ 7(a), (c)].

Plaintiff further alleges that defendants misrepresented plaintiff's prospects for employment upon graduation from ITT, induced plaintiff to enter into contracts with lenders to borrow money, and misrepresented the possibilities for program graduates to obtain employment [*Id.*, ¶ 7(b), (d)]. Last, plaintiff alleges that defendants used deceptive and unfair practices to explain the terms of loan used to pay ITT's tuition and provided misleading and/or vague information regarding loan amounts, the identity of creditors, interest rates, and information regarding the loans and/or repayment of the loans [*Id.*, ¶ 9(c)].

---

[2]Sallie Mae, Pioneer, and USAF were also defendants in this action. On April 11, 2012, the Court granted Sallie Mae, Pioneer, and USAF's Rule 12(b)(6) motions to dismiss [Doc. 38].

[3]Plaintiff has not alleged any particular allegation against a specific defendant, referring instead to all defendants in the aggregate.

On September 29, 2011, plaintiff filed a complaint in state court, purportedly on behalf of all persons who enrolled at ITT and acquired loans through Sallie Mae and/or USAF [*Id.*, ¶ 5]. In the complaint, plaintiff alleges claims for (1) intentional and/or negligent misrepresentation; (2) civil conspiracy; and (3) a violation of the Tennessee Consumer Protection Act of 1977 (the "TCPA"), Tenn. Code Ann. §§ 47-18-101, *et seq.* [*Id.*, ¶¶ 7-12]. Plaintiff seeks compensatory damages, disgorgement of "ill-gotten gains," restitution, attorney's fees and costs, state and federal penalties, including treble damages, and injunctive relief [*Id.*, ¶ 14]. Defendants removed the case to this Court [Doc. 1] and ITT filed the instant motion to dismiss [Doc. 18].

ITT has moved for dismissal of plaintiff's claims because per the enrollment agreements plaintiff entered into with ITT (the "Enrollment Agreements"), plaintiff agreed to resolve in arbitration "any dispute arising out of or in any way related" to the Enrollment Agreements [Docs. 18, 19, 19-1]. In response to ITT's motion to dismiss, plaintiff does not dispute that he signed the Enrollment Agreements [Doc. 29, p. 3 ("plaintiffs do not dispute the fact that [plaintiff] signed [the Enrollment Agreements")]. Plaintiff contends, however, that the arbitration clauses within the Enrollment Agreements should not be enforced because he had no knowledge of the existence of the clauses, he was never informed that the Enrollment Agreements contained arbitration clauses, he did not understand the meaning of the arbitration clauses, and because arbitration clauses are unconscionable.

3

## II. Standards of Review

In ruling upon motions to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc.*, 487 F.3d at 476. The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). *See also Ashcroft v. Iqbal*, 556 U.S. 662, —, 129 S.Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Ultimately, this determination—whether a plaintiff's claim is "plausible"—is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950 (citations omitted).

The Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 2, *et seq.*, "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 595 (6th Cir. 1995) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). It mandates that arbitration clauses in commercial contracts "shall be valid irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration

4

may petition any United States district court which . . . would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4.

In determining whether parties agreed to arbitrate a particular dispute, a court must conduct a two-part inquiry. *Pippenger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 1:09-cv-167, 2009 WL 2244613, at *2 (E.D. Tenn. July 29, 2009) (citation omitted). The court must first evaluate whether a valid agreement to arbitrate exists between the parties and, second, whether the specific dispute at issue falls within the substantive scope of that agreement. *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649 (6th Cir. 2008). In making this inquiry, a court must turn to the applicable state contract law to determine whether the arbitration clause was validly obtained. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005). If the court determines that the dispute is governed by the arbitration clause, the court shall then "direct[] the parties to proceed to arbitration in accordance with the terms of the agreement" and stay the trial "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. §§ 3, 4.

A court may dismiss rather than stay a case when all issues raised in the complaint are arbitrable. The United States Court of Appeals for the Sixth Circuit has stated that "'[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.'" *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)); *see also Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707,

5

709-10 (4th Cir. 2001) (concluding that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable") (citation omitted); *Gassner v. Jay Wolfe Toyota*, No. 4:06-CV-1335 CAS, 2007 WL 1452240, at *3 (E.D. Mo. May 15, 2007) ("Where all issues in a case must be submitted to arbitration, it serves no purpose to retain jurisdiction and stay an action."). District courts within the Sixth Circuit have followed this rule. *See Moore v. Ferrellgas, Inc.*, 533 F. Supp. 2d 740 (W.D. Mich. 2008); *Shammami v. Broad Street Sec., Inc.*, 544 F. Supp. 2d 585, 588 n. 6 (E.D. Mich. 2008) (collecting cases); *Ozormoor v. T-Mobile USA, Inc.*, No. 08-11717, 2008 WL 5188772, at *1 (E.D. Mich. Dec. 9, 2008).

**III.    Analysis**

ITT contends that plaintiff entered into two Enrollment Agreements with ITT, the first on August 14, 2002 and the second on November 28, 2005, in which plaintiff agreed to submit to binding arbitration any disputes with ITT "arising out of or in any way related" to the Enrollment Agreements [Doc. 19-1, p. 6]. ITT further contends that the Enrollment Agreements form the basis of plaintiff's relationship with ITT, including plaintiff's obligation to pay tuition, that all of plaintiff's claims fall within and arise out of the arbitration clauses, and therefore, plaintiff's claims must be brought in arbitration, if at all. Accordingly, pursuant to the FAA, ITT requests that the Court dismiss plaintiff's claims against it because plaintiff agreed to submit such claims to binding arbitration.

As an initial matter, the Court notes that because a motion to dismiss pursuant to Rule 12(b)(6) tests the "sufficiency of the plaintiff's claim for relief," the Court "may consider only matters properly part of the complaint or pleadings" in deciding the merits of the

6

motion. *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) (citations omitted). *See also* Fed. R. Civ. P. 12(d). If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Sixth Circuit "takes a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)." *Armengau*, 7 Fed. App'x at 344. "If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings." *Id.* (citation omitted).

Here, plaintiff alleges that he attended ITT, a for-profit school, that he acquired loans through Sallie Mae and/or USAF to attend ITT, and that he enrolled at ITT, along with the members of his proposed class of potential plaintiffs. Plaintiff also alleges intentional and/or negligent misrepresentation arising out of his enrollment and attendance at ITT and the loans he acquired in order to attend school. In his response to ITT's motion to dismiss, plaintiff states that he "does not dispute the fact that [plaintiff] signed [the Enrollment Agreements.]" [Doc. 29, p. 3]. It is also apparent from the Enrollment Agreements, which ITT submitted as exhibits to its motion to dismiss [Doc. 19-1], that the agreements relate to plaintiff's enrollment at ITT and form the basis for plaintiff's relationship with the school. Thus, because the Enrollment Agreements appear to be central to plaintiff's claims, and because there is no dispute that plaintiff executed the Enrollment Agreements when he enrolled at ITT, the Court finds that it can consider the Enrollment Agreements in resolving ITT's motion to dismiss under Rule 12(b)(6).

Plaintiff argues that the Enrollment Agreements are "twelve-page form contract[s]" of adhesion and that the arbitration clause was concealed and buried in boilerplate. The Court disagrees.

Each Enrollment Agreement contains a notice above the executed signature line stating that "THIS AGREEMENT REQUIRES BINDING ARBITRATION OF DISPUTES," [Doc. 19-1, p. 4]. The arbitration clause itself is located in the "TERMS" section of the Enrollment Agreement, under the heading "<u>Resolution of Disputes</u>, and describes what binding arbitration is and how the arbitration will proceed:

> Arbitration is the referral of a dispute to one or more impartial persons for a final and binding determination. Both Student and School agree that this Agreement involves interstate commerce and that the enforceability of this Resolution of Disputes section will be governed by the Federal Arbitration Act, 9 U.S.C. § 1-9 ("FAA"). The arbitration between Student and School will be conducted in accordance with the American Arbitration Association's ("AAA") Commercial Arbitration Rules ("Commercial Rules") and, when deemed appropriate by the AAA, the Supplementary Procedures for the Resolution of Consumer-Related Disputes ("Consumer Procedures"), subject to the following modifications[.]

[*Id.*, p. 6].

Given this conspicuous notice of arbitration, the location of the arbitration clause within the "TERMS" section of the Enrollment Agreement along with the other typical contractual provisions, and the contents of the arbitration clause itself, the Court disagrees with plaintiff that the arbitration clause was "hidden" or concealed in boilerplate.

Plaintiff's argument that he was not aware of the arbitration clauses in the Enrollment Agreements is also not grounds for the Court to refuse to apply the clauses. Under Tennessee

8

law, a party's failure to read an agreement will not relieve a party from the effect of his or her agreement. *See Giles v. Allstate Ins. Co., Inc.*, 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993) ("To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of contracts[.]"); *Reno v. Suntrust, Inc.*, No. E200-016410COA-R3-CV, 2007 WL 907256, at *4-*6 (Tenn. Ct. App. Mar. 6, 2007) (enforcing arbitration provision despite the plaintiff's claim that she was ignorant of its existence and nature). Here, the Enrollment Agreements each contain a description of what arbitration is, the arbitration clause binds both parties, it identifies the location of the arbitration and the governing laws and procedures, and plaintiff has submitted no law stating that ITT had an obligation to explain to plaintiff anything about the arbitration clause at the time of signing. *See Reno*, 2007 WL 907256, at *5.

Plaintiff also argues that the arbitration clauses are unconscionable and should not be enforced because the clauses substantially limit his rights. This argument, however, conflicts with the federal policy favoring arbitration and the decisions of the United States Supreme Court and Tennessee courts applying the FAA. As recognized by the Tennessee Court of Appeals in *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 356-57 (Tenn. Ct. App. 2001), due to the FAA's policy favoring arbitration, a state cannot invalidate an arbitration clause governed by the FAA simply because it views arbitration as unfair. *Id.* at 357 (quoting *Allied-Bruce Terminix Companies*, 513 U.S. 265, 281 (1995)). *See also AT&T Mobility, LLC v. Concepcion*, 131 S.Ct. 1740, 1746, 1748 (2011) (stating that the FAA reflects both a

"liberal federal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract . . . [and as a result] courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms" and that the FAA displaces state common law that stands as an obstacle to these policies). Consistent with this liberal policy, the FAA has been interpreted as requiring courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Accordingly, plaintiff's argument that the arbitration clauses are unconscionable and unenforceable is not well-taken.

Finally, the Court notes that plaintiff has not argued that he was fraudulently induced to agree to the arbitration clauses alone. Rather, plaintiff argues that the Enrollment Agreements, as a whole, are contracts of adhesion. *See Rent-A-Center, West, Inc. v. Jackson*, — U.S. —, 130 S.Ct 2772, 2778 (2010) (holding that a party's challenge to a contract as a whole does not prevent a court from enforcing a specific agreement to arbitrate, but when a party presented a challenge of fraud in the inducement of the arbitration clause alone, the court should address that challenge prior to compelling arbitration).

Accordingly, the Court finds the arbitration clauses of the Enrollment Agreements to be valid and enforceable. The Court must therefore determine whether the complaint should be dismissed or this case be stayed and arbitration be compelled. As noted above, the FAA directs courts to stay an action pending arbitration. *See* 9 U.S.C. § 4. However, the Court's ability to dismiss a case is not limited when all issues raised in the complaint are arbitrable. *See Moore*, 533 F. Supp. 2d 740; *Shammami*, 544 F. Supp. 2d at 588 n. 6; *Ozormoor*, 2008

10

Case 3:11-cv-00552-TAV-CCS   Document 40   Filed 05/01/12   Page 10 of 11   PageID #: 322

WL 5188772, at *1. Here, the remaining claims in plaintiff's complaint are arbitrable as all remaining claims in the complaint are against ITT and arise under and relate to the Enforcement Agreements.[4] Accordingly, the Court concludes that dismissal is the appropriate remedy. The Court discerns no purpose for retaining jurisdiction and staying this action.

**IV.  Conclusion**

For the reasons stated above, ITT's motion to dismiss [Doc. 18] will be **GRANTED** and plaintiff's claims against ITT will be **DISMISSED**. This case will be **CLOSED**. An appropriate order will be entered.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

---

[4] As noted *supra*, plaintiff's claims against Sallie Mae, Pioneer, and USAF were dismissed by the Court on April 11, 2012 [Doc. 38].

11

Case 3:11-cv-00552-TAV-CCS   Document 40   Filed 05/01/12   Page 11 of 11   PageID #: 323